UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTE YOUNG,

    Plaintiff,

v.                                                                       Case No. 17-11590

COUNTY OF SANILAC,                                  HON. AVERN COHN
MONIQUE TANK, and
DANNY OWEN, JR.,

    Defendants.
_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 19)[1]

I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Deonte Young is suing the County of Sanilac and Sanilac County Jail corrections officers Monique Tank and Danny Owen, Jr. Plaintiff alleges that defendants failed to protect him from an assault by another inmate. The complaint asserts the following claims:

    Count I - 14th Amendment Due Process - Deliberate Indifference and Failure to Protect against individual defendants

    Count II - 14th Amendment Substantive Due Process - Deliberately Exposed Plaintiff to Substantial Risk of harm against individual defendants

    Count III - Constitutional Violations - Failure to Train - against Sanilac County

    Count IV - Gross Negligence - Failing to Perform Duties - against individual defendants

---

[1]Although originally scheduled for hearing, upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Before the Court is defendants' motion for summary judgment. For the reasons that follow, the motion will be granted and the case will be dismissed.

## II. Background

The material facts as gleaned from the record follow.

### A. In General

The incident which forms the basis for Young's complaint occurred on May 25, 2015 at the Sanilac County Jail. At that time, Young was an inmate serving the remainder of a federal sentence for possession of a firearm and awaiting trial on a second charge of theft of government property. Thus, he was both a pretrial and post-trial detainee.

The incident took place at an area of the jail known as A-Pod. A-Pod consists of two floors with cells located on both the upper and lower levels. The lower level contains a large open area that is used by inmates for recreation and meals. Each cell houses two inmates. The maximum capacity of A-Pod is 34 inmates, 17 on each floor.

The recreation/meal area is about 35 feet wide and 60 to 70 feet long. The area contains tables and stools and one microwave oven. Inmates are permitted to move about freely this area.

Inmates are locked in their cells from approximately 11:30pm to 5:00 pm daily. Meals are served at 5:30am, 11:00am, and 4:00pm. Inmates are also locked in their cells for approximately 30 minutes after each meal.

A master control room is located on the first level of A-Pod and is approximately 15 by 10 feet in size. The control room contains two computer screens to monitor several cameras located throughout the jail. It also contains glass from which the

corrections officers can see out into A-Pod but inmates cannot see into the control room. The corrections officer assigned to the control room has the ability to monitor all areas of the jail.

B. The Incident

1. Young's Testimony

Young testified that during the evening of May 22, 2015 he joined other inmates in a poker game in the recreation area of A-Pod. One of the inmates in the game was Fonville. One of the rules of the game was that if an inmate left the table during a hand, he would not be permitted to participate in the game until the next hand was dealt. When it was Young's turn to deal, Fonville left the area and went to his cell. Per the rule, Young did not deal Fonville in the hand. When Fonville returned to the table, he was upset that he had not been dealt into the hand. According to Young, he exchanged heated words with Fonville Young even stood up and zipped up his jumpsuit during the confrontation. However, Young testified that "it was all verbal. You know. It was just going back and forth, so I didn't feel threatened at that point." Young also testified that "nothing ever got physical." Young further testified that "[w]hen the argument kind of died down I was still standing there ... [and] I see him go back to his room on A-Pod." A few minutes later, Young sees Fonville return to the recreation area with a clear plastic cup of water. Fonville then goes over to the microwave and heats up his cup. Young testified that he was "sort of" watching him and also "not looking his way." A few minutes later, Fonville calls out Young's name and throws the cup at him from a distance of about six feet away. The cup contained a mixture of hot water and baby oil. Young testified that corrections officers "immediately" were on the scene and he was

taken to a hospital and treated for burns.

Young also testified that prior to this incident, he never had any problems with or fear of Fonville and had never reported anything about Fonville to anyone at the Sanilac County Jail.

### 2. Owen's Testimony

Owen testified that he has been employed by the Sanilac County Sheriff's Department since 2008. He is currently a corrections sergeant and a shift supervisor. On May 22, 2015, he was working the 5:00am to 5:00pm shift and stationed in the master control room.

Owen further testified that prior to the incident, he was not aware of any issues with either of Fonville or Young's conduct.

Owen also testified that prior to the incident, he did not observe anyone in a fighting stance in the recreation area or hear any raised voices. A few minutes before the assault, Tank entered the master control room. Shortly thereafter, Owen saw Fonville move his arm in a circular motion and then liquid splashed on the control room window. Tank immediately entered A-Pod and Owen radioed for assistance. Verran, a Deputy, also arrived on the scene to assist Tank.

After the incident, Owen said that he directed that the microwave be removed from A-Pod as well as another microwave located at C-Pod. He further testified that during his seven years at the jail, there was only one prior incident with a microwave which occurred in December of 2014 when another inmate heated liquid and assaulted another inmate. Owen explained that he did not order the removal of the microwaves after that incident because it was believed to be an isolated occurrence.

### 3. Tank's Testimony

Tank testified that she has worked at the Sanilac County Sheriff's Office since 2009. On May 22, 2015, she was working the 5:00pm to 5:00am shift. She testified that she performed well being checks on inmates at least twice an hour.

Tank, like Owen, testified that she was unaware of any issues, concerns or problems with either Fonville or Young. Nor was she aware of Fonville displaying any assaultive behavior towards any other inmate.

Tank testified that she entered the master control room and was only in there about a minute before she saw a forward motion by Fonville which resulted in the assault. She further testified that she immediately entered A-Pod and called for back up. All inmates were returned to their cells and Young was given medical attention.

## III. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

## IV. 1983 Claims

### A. In General

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that (1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. See Flagg Bros. v. Brooks, 436 U.S. 149, 155-57 (1978); see also Harris v. Circleville, 583 F.3d 356, 364 (6th Cir. 2009).

As an initial matter, it appears that Young was both a pretrial detainee and a convicted person at the time of the incident. As a pretrial detainee, his claims are analyzed under the Fourteenth Amendment. As an inmate serving a sentence, his claims are analyzed under the Eighth Amendment. Regardless, however, the Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the same Eighth Amendment protections as convicted inmates. Miller v. Calhoun County, 408 F.3d 803, 812 (6th Cir. 2005).

### B. Municipal Liability

#### 1. Legal Standard

A municipal party may only be sued under § 1983 if a claimant is harmed by execution of an unconstitutional policy or custom. Monell, 436 U.S. at 694. Relying on City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), Young contends that Sanilac County should be liable for its failure to train or supervise Tank and Owen on

6

addressing the issue of inmate on inmate violence.

To prevail on a failure to train or supervise theory, Young must establish that: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006).

2.  Application

Young cannot prevail his claim against Sanilac County. Both Tank and Owen testifies that they received training on inmate to inmate violence and inmate behavior. Sanilac County also has policies and procedures relating to inmate supervision which are aimed at securing the safety of inmates. The Standards of Conduct require corrections officers to observe each inmate once every 30 minutes. Officers are also required to report in writing any unusual behavior or activity, including violent behavior by inmates. The Standards also require an officer to remove an inmate to segregation for an inmate's protection. Moreover, the master control room has two computer screen which monitor approximately 100 cameras located throughout the jail and the master control room is continuously staffed. Thus, it is clear that Sanilac County has policies and mechanisms in place to provide for the safety of inmates.

While Young says that Sanilac County had inadequate training on dealing with how to diffuse a "potentially violent situation," as discussed below, the record here fails to show that there was a "potentially violent situation" which needed to be diffused. Young also make much of the fact that Owen did not note the incident in the log book. Even if true, that does not mean Sanilac County is liable. Sanilac County has policies in

place.  Owen's alleged failure to follow a policy regarding the log book does not mean that Sanilac County is deliberately indifferent.

To the extent Young argues that the presence of a microwave is evidence of an unconstitutional practice, he cannot prevail.  It is undisputed that use of a microwave is a privilege.  Young testified that inmates used it frequently in the evening to heat water for noodles before being returned to their cells at night.  That Sanilac County jail permitted inmates to use a microwave is not evidence of an improper policy. Nor is the fact that in the several years of having a microwave there were two incidents of inmates being burned sufficient to create a genuine issue of municipal liability. Overall, Sanilac County is entitled to summary judgment.

C.  Individual Liability

1.  Legal Standard

Prisoners have a constitutional right to be protected from the violence of other prisoners and prison officials.  Farmer v. Brennan, 511 U.S. 825, 833–34 (1994); Wilson v. Yaklich, 148 F.3d 596, 601 (6th Cir. 1998).  However, prison officials overstep constitutional bounds only when they "fail to take reasonable measures to protect inmates against substantial risks of serious harm of which they have knowledge."  Wells v. Jefferson County Sheriff Dep't, 159 F. Supp. 2d 1002, 1010 (S.D. Ohio 2001) (citing Farmer, 511 U.S. at 837–38; Street v. Corrections Corporation of America, 102 F.3d 810, 814–15 (6th Cir.1996)).  Although an inmate need not show that "he has been the victim of an actual attack to bring a personal safety claim, he must establish that he reasonably feared such an attack."  Thompson v. County of Medina, 29 F.3d 238, 242 (6th Cir.1994) (citing Marsh v. Arn, 937 F.2d 1056, 1062 n. 5 (6th Cir.1991)).  An inmate

8

must show that a prison official acted with deliberate indifference in failing to protect the inmate against the risk of assault. McGhee v. Foltz, 852 F.2d 876, 880–81 (6th Cir.1988); see also Wilson, 148 F.3d at 601; Wells, 159 F. Supp. 2d at 1010.

Thus, although prison officials have a duty to protect prisoners from assault by other prisoners, the Supreme Court has recognized that jail and prison officials cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted. "[A] prison official may be held liable under the Eighth Amendment...only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. That is, the inmate must show both that the risk of harm is sufficiently "serious," an objective inquiry, and that prison officials acted with "deliberate indifference" to inmate health or safety, a subjective inquiry. Id. at 837-38; Helling v. McKinney, 509 U.S. 25, 32 (1993). Thus, "a prison official may be held liable under the Eighth Amendment...only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847

2. Application

Viewing the facts in a light most favorable to Young, no reasonable juror could find that Tank or Owen were deliberately indifferent to his right to be free from an assault. Young testified at deposition that although he and Fonville exchanged words, once Fonville left and went to his room, he considered the matter ended. He also testified that he was never afraid of Fonville. If Young was not afraid Fonville would act violently toward him, there is no basis for a claim that Tank or Owen were deliberately

indifferent to his right. Rather, a fair read of the record shows that the incident with Fonville could not have been prevented inasmuch as there was no indication that Fonville would throw hot water on Young. The record is also clear that Tank and Owen acted immediately in assisting Young in getting him medical treatment after the incident.

Young says that Tank and Owen should have heard him arguing with Fonville, and then surmise that when Fonville was heating up the cup of water he would use it to throw it at Young simply proves too much. There is simply no evidence from which a reasonable juror could conclude that Tank and/or Owen were deliberately indifferent or disregarded a substantial risk of harm to Young.

To the extent Young says that Owen was deliberately indifferent by not removing the microwave after a similar burning incident occurred several months before this incident, he cannot prevail. Owen explained at deposition that he, and apparently other officials at Sanilac County jail, believed that the prior incident was isolated. The fact that Owen decided to remove the microwave after Young's incident is also not indicative that he was deliberately indifferent to Young, or any other inmate's rights.

V.  Gross Negligence

A.  Legal Standard

Young also pleads as a separate cause of action, "gross negligence" under state law. But gross negligence is not a standalone cause of action under Michigan law. Under Michigan's Tort Liability Act, a governmental employee is not liable for personal injuries sounding in tort provided the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." M.C.L. § 691.1407(2)(c). Gross negligence is defined as "conduct so reckless as to demonstrate

10

a substantial lack of concern for whether an injury results." Id. at § 691.1407(8)(a). A gross negligence claim cannot be maintained as a separate cause of action, but is only relevant in determining whether a governmental actor is entitled to immunity for negligent tort liability. Bletz v. Gribble, 641 F.3d 743, 757 (6th Cir. 2011). Moreover, liability is established only where the "gross negligence that is the proximate cause" of the plaintiff's injury. M.C.L. § 691.1407(2)(c).

B.  Application

Defendants contend that neither Tank nor Owen's actions constitute gross negligence. The Court agrees. Young never reported any threats or assaultive behavior by Fonville or any other inmate prior to the incident. Young admitted he had no prior issues with Fonville and had not spoken to him before the incident. Young also believed any threat posed by Fonville during their verbal altercation was over when Fonville went to his room. Just as Young could not have predicted that Fonville would throw hot water on him, neither could Tank and Owens. No reasonable juror would find that Tank nor Owens demonstrated any behavior towards Young that could be considered reckless or show a substantial lack of concern for Young's safety well being.

Defendants also argue that Young cannot establish that Tank and Owen's actions, or failure to act, were "the" proximate cause of his injuries. The Court also agrees. As noted above, Young must show that the alleged misconduct was "the proximate cause" of the injuries. Robinson v. City of Detroit, 462 Mich. 439, 462 (2000). This means a plaintiff must show that the misconduct was the most immediate, efficient, and direct cause of the plaintiff's injuries. Id.

Young has failed to show that Tank or Owen's conduct was the proximate cause

11

of his injuries. Even taking the evidence in the light most favorable to Young, there is no evidence establishing that Tank or Owen's acts were "the one most immediate, efficient, and direct cause preceding [Young's] injury." Id. It was Fonville, not Tank or Owens who assaulted Young. Accordingly, Young has not established that either Tank or Owens was grossly negligent. See also, Dean v. Childs, 474 Mich. 914 (2005) (reversing lower court's denial of summary disposition regarding the alleged gross negligence of firefighters responding to a house fire by noting that "the" proximate cause of the deaths of the decedents was the fire itself, not the defendants' actions in response to the fire). Summary judgment is therefore appropriate on Young's gross negligence claim.

V. Conclusion

Young has failed to show a genuine issue of material fact over whether defendants are liable for the assault by Fonville. Rather, the record shows that the incident was unanticipated by all, including Young. The incident is in no way the result of a lack or polices or failure to train by Sanilac County or deliberate indifference or reckless conduct by Tank or Owens.

Accordingly, defendants' motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.

                                                              S/Avern Cohn
                                                              AVERN COHN
                                                              UNITED STATES DISTRICT JUDGE

Dated: 9/27/2018
      Detroit, Michigan